[Sac. No. 1411.   In Bank.—January 2, 1909.]

## MILLER AND LUX (a Corporation), Respondent, v. MADERA CANAL AND IRRIGATION COMPANY (a Corporation), Appellant.

WATER-RIGHTS—RIPARIAN OWNERSHIP—APPROPRIATION—TEMPORARY IN-
JUNCTION—ULTIMATE RIGHTS NOT ADJUDICATED—DISCRETION.—An
order granting a temporary injunction in an action by riparian own-
ers to enjoin an upper appropriator from interfering with their
riparian rights, and limiting the defendant *pendente lite* to the
exercise of certain reserved rights, is a matter resting largely in the
discretion of the court. Such order does not adjudicate the ultimate
rights of the parties in controversy, but merely determines that the

court, in balancing the respective equities of the parties, concludes that defendant should be restrained pending suit from diverting the waters beyond such reserved rights.

ID.—REVIEW OF TEMPORARY INJUNCTION UPON APPEAL—AFFIRMANCE.— In reviewing the order granting the temporary injunction upon appeal therefrom, if the record does not clearly establish any other superior rights of the appropriator beyond the rights reserved without controversy, the order must be affirmed.

ID.—QUESTION AS TO RIGHT TO DIVERT EXTRAORDINARY FLOOD WATER NOT PRESENTED—CONFLICTING EVIDENCE—DECISION NOT DISTURBED.—The question as to the right of an upper appropriator to divert water, as against a riparian owner, which runs at times of unusual and extraordinary floods in such quantities that the intended diversion could not appreciably affect or substantially injure riparian rights, is not presented by the record, when, as against the evidence for defendant to that effect on the motion for the injunction there was strongly conflicting evidence, for the plaintiff, to show that all of the waters of the stream formed one continuous body at all times, passing plaintiff's riparian land, and formed no vagrant water, and the court acted upon plaintiff's evidence to sustain the injunction. In such case, the decision will not be disturbed upon appeal.

ID.—RIPARIAN RIGHTS AGAINST UPPER APPROPRIATOR—REASONABLE USE INAPPLICABLE—ORDINARY AND INCREASED FLOW.—The doctrine of reasonable use applies only as between riparian owners, and such an owner has the right, as against an upper appropriator, to have the stream flow past his land in its accustomed channels, as part of his land, without limit by any measure of reasonable use, not only with reference to its ordinary and usual flow in the dry season, but also with reference to its increased flow following the annual rains and the melting of the snow in the region about the head of the stream, if it does not cause vagrant water, but flows in a continual stream, though overflowing the banks of the channel formed in the dry season.

ID.—PROPERTY RIGHTS OF RIPARIAN OWNERS—PUBLIC POLICY.—EMINENT DOMAIN.—The property rights of riparian owners as against appropriators, are not subject to any mere rule of public policy, and cannot be divested without compensation under the law of eminent domain.

ID.—PRIOR SUIT ELSEWHERE TO QUIET TITLE TO RIVER—PLEA OF PRESCRIPTIVE RIGHTS—COMPLAINT TO ENJOIN ACTS PENDENTE LITE— RESERVATION OF LESS RIGHTS—DISCRETION.—When a prior suit was brought in Madera County by plaintiff and another riparian owner to quiet title to Fresno River against the same defendant, who pleaded therein a prescriptive right to four hundred inches of water per second; and subsequently the present action was brought in Merced County to enjoin acts of diversion committed pending the former suit, the complaint in which did not include any prescriptive

rights, the mere reservation in the temporary injunction of only two hundred and twenty inches per second as regards prescriptive rights, does not render the form of the injunction order an abuse of discretion.

ID.—PRESCRIPTIVE RIGHTS NOT ADJUDICATED—RESULT OF PRIOR SUIT—DUTY TO MODIFY INJUNCTION.—The mere reservation made in the temporary injunction of less prescriptive rights than were claimed in the prior Madera County suit, did not adjudicate the extent of those rights; and, if in such prior suit, it should be adjudicated finally that the prescriptive rights are more extensive, it would be the duty of the Merced County superior court to modify its injunction accordingly.

ID.—VENUE OF INJUNCTION SUIT—CLAIM OF DAMAGES TO LAND IN MADERA COUNTY—JURISDICTION.—The injunction suit to restrain the diversion of water in Merced and Madera counties, though the claim for damages is for wrongful acts of diversion of water from and injury to lands in Madera County, was properly commenced in Merced County, and the temporary injunction was properly issued therein; and the Merced County superior court has jurisdiction to try the case, unless the defendant should demand the trial thereof in the county where the land injured is situated.

ID.—USUALLY RECURRING FLOODS IN ACCUSTOMED CHANNEL PART OF ORDINARY FLOW.—When there are natural and accustomed limits to the channel of a river, though the channel for the dry season may be more limited, and that for the wet season may be customary, but more extended, and usually recurring flood waters flow in one continuous stream in the accustomed extended channel and are naturally confined thereto, the regular recurrence of such flood waters must be deemed part of the ordinary flow of the stream, and riparian rights pertain to the whole of it, and no riparian owner can be deprived thereof to his injury.

ID.—RIPARIAN LANDS BENEFITED BY WIDER FLOW.—When it clearly appears that the riparian lands of the plaintiff are greatly benefited by the wider flow of the stream, there can be no ground on which the defendant can divert the same as not being injurious to the plaintiff.

ID.—CONSTRUCTION OF RESERVOIR BY DEFENDANT — PLAINTIFF NOT ESTOPPED. — The plaintiff is not estopped by the expenditure of means by the defendant in the construction of a reservoir, when the plaintiff was ignorant of any unlawful intent in the construction thereof, and took immediate steps to enjoin the unlawful diversion of water by means thereof, when such unlawful intention became manifest, and before water therein had become appropriated to any beneficial use.

APPEAL from an order of the Superior Court of Merced County granting a temporary injunction. E. N. Rector, Judge.

The facts are stated in the opinion of the court.

M. B. Kellogg, D. S. Dorn, T. J. Savage, W. H. Davis, and Leonard & Surr, *Amici Curiæ*, for Appellant.

Frank H. Short, Frohman & Jacobs, J. K. Law, and Edward F. Treadwell, for Respondent.

SLOSS, J.—This appeal was originally heard in Department Two of this court, and the order appealed from was there affirmed. Upon application of the appellant, a rehearing was granted and the cause ordered to be heard in Bank.

The opinion filed by the Department fully and satisfactorily disposes of all the points arising on the appeal and is adopted as the opinion of the court in Bank. ·A few words may, however, be added to what has heretofore been said.

The rehearing was ordered for the reason that the case was thought to involve the question of the right of a riparian owner to enjoin the diversion by an upper appropriator of water of a stream running at times of unusual and extraordinary flood in such quantities that the intended diversion could not appreciably affect or substantially injure the riparian rights of the plaintiff. This question has, to some extent, received consideration at the hands of this court in *Modoc Land Co.* v. *Booth,* 102 Cal. 151, [36 Pac. 431]; and *Fifield* v. *Spring Valley Water Works,* 130 Cal. 552, [62 Pac. 1054]; and the appellant argues that the rule declared in those cases requires a reversal of the order now under consideration. It appears, however, that the record before us does not present the supposed problem.

This is an appeal from an order granting a temporary injunction. It would be superfluous to cite authorities to show that the granting or refusing of a preliminary injunction is a matter resting largely in the discretion of the trial court. Where there is a substantial conflict in the evidence regarding an issue which may affect the discretion of the court in passing upon the application for such injunction, the order made will not on appeal be overthrown merely because there may be considerable or even preponderating evidence, which, if believed, would have led to a contrary conclusion. The granting or denial of a preliminary injunction does not amount to an adjudication of the ultimate rights in controversy. It merely

determines that the court, balancing the respective equities of the parties, concludes that, pending a trial on the merits, the defendant should or that he should not be restrained from exercising the rights claimed by him. When the cause is finally tried, it may be found that the facts require a decision against the party prevailing on the preliminary application.

While the defendant claims, and at the hearing of the motion for an injunction offered evidence with the purpose of showing, that the waters sought to be diverted by it were the results of mere occasional freshets or floods, which, if not taken, would leave the bed of the stream and be wasted, the plaintiff introduced a quantity of evidence tending to prove that the waters which defendant was about to take formed a part of the usual and ordinary flow of the Fresno River; that such flow was one which occurred in almost every season of normal rainfall, and that it passed the plaintiff's land in a continuous body of water, through a well-defined channel, and eventually emptied into the San Joaquin River and through it into the sea. That the owners of land bordering upon such a flow of water are riparian proprietors, entitled to all the rights pertaining to riparian ownership, is a proposition fully sustained by the authorities cited in the Department opinion.

It is suggested that a different rule should apply in a semi-arid climate like that of California, where the fall of rain and snow occurs during only a limited period of the year, and, consequently, streams carry in some months a flow of water greatly exceeding that flowing during the dry season, with the result that such increased flow is not, at all points, confined within the banks which mark the limits of the stream at low water. But no authority has been cited, and we see no sufficient ground in principle, for holding that the rights of riparian proprietors should be limited to the body of water which flows in the stream at the period of greatest scarcity. What the riparian proprietor is entitled to as against non-riparian takers is the ordinary and usual flow of the stream. There is no good reason for saying that the greatly increased flow following the annually recurring fall of rain and melting of snow in the region about the head of the stream is any less usual or ordinary than the much diminished flow which comes after the rains and the melted snows have run off.

Perhaps other considerations should apply where a river, in times of heavy flow, runs over its banks in such manner that large volumes of water leave the stream and spread over adjoining lands to an indefinite extent, there to stagnate until they evaporate or are absorbed by the soil. But the evidence of respondent, and this was the evidence on which the court below acted, fails to show that the water which defendant seeks to divert was such "vagrant water." The evidence of respondent was to the effect that at all seasons the water of the Fresno River, even though overflowing the banks of the channel in which it flowed during the dry season, formed a single and continuously flowing stream.

The argument that the method of irrigation adopted by plaintiff, i. e., that of having the annual increased flow of the river spread over its lands, was not a reasonable use of the water can have no weight in this case. The doctrine that a riparian owner is limited to a reasonable use of the water applies only as between different riparian proprietors. As against an appropriator who seeks to divert water to non-riparian lands, the riparian owner is entitled to restrain any diversion which will deprive him of the customary flow of water which is or may be beneficial to his land. He is not limited by any measure of reasonableness. If any doubt ever existed on this point, none can remain since the recent decision of this court in *Anaheim Union Water Co.* v. *Fuller,* 150 Cal. 327, [88 Pac. 978]. The cases relied on to show that the riparian owner is entitled to only a reasonable use of the water were all cases of controversies between owners of different parcels of land riparian to the same stream.

Virtually the same point is presented by the argument that plaintiff is not limiting itself to the most economical manner of using the water. This is not an objection which may be raised by an appropriator who seeks to divert water of the stream to non-riparian lands.

It is argued that unless appropriators are permitted to divert and store for future use water which would otherwise run into the sea and be wasted, there will be a failure to make the most beneficial use of the natural resources of the state and that riparian owners should not be permitted to obstruct the development of these resources. It may be that, if non-riparian owners are permitted to intercept the winter flow of

streams, in order to irrigate non-riparian lands or to develop power, the water so taken will permit the cultivation of more land and benefit a greater number of people than will be served if the flow continues in its accustomed course. But the riparian owners have a right to have the stream flow past their land in its usual course, and this right, so far as it is of regular occurrence and beneficial to their land is, as we have frequently said, a right of property, "a parcel of the land itself." Neither a court nor the legislature has the right to say that because such water may be more beneficially used by others it may be freely taken by them. Public policy is at best a vague and uncertain guide, and no consideration of policy can justify the taking of private property without compensation. If the higher interests of the public should be thought to require that the water usually flowing in streams of this state should be subject to appropriation in ways that will deprive the riparian proprietor of its benefit, the change sought must be accomplished by the use of the power of eminent domain. The argument that these waters are of great value for the purposes of storage by appropriators and of small value to the lower riparian owners defeats itself. If the right sought to be taken be of small worth, the burden of paying for it will not be great. If, on the other hand, great benefits are conferred upon the riparian lands by the flow, there is all the more reason why these advantages should not without compensation, be taken from the owners of these lands and transferred to others.

On the other points raised by the appellant we have nothing to add to what was said in the Department opinion.

The order is affirmed.

Lorigan, J., Angellotti, J., Hall, J., and Chipman, J., concurred.

Beatty, C. J., dissented.

NOTE.—Justice Hall, one of the justices of the district court of appeal for the first appellate district, participates herein *pro tempore,* in place of the late Justice McFarland, who, at the time of the oral argument was unable to act by reason of sickness; and, Justice Shaw being disqualified, Justice Chip-

man, one of the justices of the district court of appeal for the third appellate district, participates herein *pro tempore.* Both justices participate herein pursuant to section 4 of article VI of the constitution, and an order filed August 4, 1908, pursuant thereto.

The following is the opinion rendered in Department Two, October 2, 1907, referred to and adopted in the foregoing opinion in Bank.

LORIGAN, J.—This is an appeal from an order of the superior court of Merced County granting a preliminary injunction against defendant, restraining it from diverting, pending the trial of the action, into its reservoirs by means of its ditches and canals, any of the waters of Fresno River exceeding two hundred and twenty cubic feet per second.

Before proceeding to a consideration of the pleadings in this suit in Merced County, and the merits of this particular appeal from the order granting a preliminary injunction made in it, it will be necessary to refer to the pleadings in another action instituted in the superior court of Madera County and which appear in the record of the present appeal and are involved in its consideration. On November 28, 1900, the plaintiff herein, together with the California Pastoral and Agricultural Company, and others, brought an action against the defendant (appellant herein) in the superior court of Madera County. When we have occasion hereafter to refer to this action, it will be designated for convenience as the Madera County suit. The object of that action was to quiet the title of plaintiffs, as riparian owners on the Fresno River, to the waters thereof against the defendant, and in the complaint it was alleged that the defendant canal company was diverting waters from said river to non-riparian lands by means of a canal known as the Main Canal and a ditch known as the Adobe Ranch ditch connecting with the Main Canal below; that at the time the action was commenced. the canal company was attempting to enlarge its canal and ditch and increase its diversions from the river; that it claimed the right by prescription to divert portions of said waters of the river; that the plaintiffs were ignorant of the extent of such rights, if they existed, and prayed that the

extent of the right of the canal company to divert the waters
of said river be determined and that it be enjoined from tak-
ing any quantity of water in excess of the amount which it
should be determined it was then entitled to divert.

In its answer in that suit the defendant alleged, among
other things, that it had acquired the right by prescription to
divert the waters of said river and that a large quantity of
the water which it diverted was water it had artificially con-
tributed to the stream and which was turned into it from
other and different sources than the natural sources of said
river; that such contributed waters were in amount largely
in excess of the capacity of the Adobe Ranch ditch and equal
to ten thousand miner's inches (or two hundred cubic feet of
water flowing per second) of water measured under a four-
inch pressure; that it was not attempting to enlarge its canal
and increase its diversions from said Fresno River, but at the
commencement of the action was engaged in cleaning out its
Adobe Ranch ditch so as to enable it to carry the ten thousand
inches of water artificially contributed to the river; that it
had a right by prescription to divert all the waters flowing in
Fresno River at the points designated in the complaint, in-
cluding the said contributed waters "except at seasons of ex-
traordinary flood caused by unusual rains or the melting of
snows in the mountains above," when the capacity of the
canals of said defendant is not sufficient to carry the whole
thereof, and that at such seasons it diverted water to the full
capacity of its main canal, which was alleged to be four hundred
cubic feet flowing per second. This Madera suit was tried in
May, 1902, but before it was decided on motion of defendant,
an order was made on August 29, 1902, reopening the case for
the submission on the part of defendant of additional evi-
dence. Before the trial was resumed, plaintiffs by permission
of the court, and on March 27, 1904, filed a supplemental com-
plaint, setting up that since the order reopening the case was
made the canal company had constructed certain reservoirs
and ditches for diverting the waters of Fresno River into
said reservoirs and thereafter drawing them off and thereby
preventing them from reaching the riparian lands of the
plaintiff, and that the canal company without right was at-
tempting to add these diversions to those which had been made
prior to the commencement of the Madera County suit, and

an injunction was asked to restrain the canal company from diverting any water in addition to that which it had diverted prior to the date of filing the complaint in the Madera County suit and a temporary restraining order was issued. On motion of the canal company the supplemental complaint was stricken out on the ground that the matters therein stated constituted, and related solely to, a new, independent, and additional cause of action and were not proper to be brought into said action by supplemental complaint, and the restraining order was dissolved.

Immediately following the order striking out the supplemental complaint in the Madera County suit, and on April 24, 1904, the present action was commenced in the county of Merced, and will be hereafter referred to as the Merced County suit. The complaint consisted of two counts. The first was to obtain an injunction to prevent the continuance of the alleged trespasses upon the property of plaintiff described therein, and the second to recover damages for trespasses alleged to have been committed prior to the commencement of the action. The complaint is quite lengthy and reference will be made only to the allegations therein common to both its counts and with respect to matters particularly germane to the questions raised on this appeal. It alleges that plaintiff is the owner of large tracts of land in Madera and Merced counties, those in Madera County being riparian to and irrigable from the Fresno River and its various channels and waterways, and those in Merced County riparian to and irrigable from the San Joaquin River, and adjacent to and bordering upon said river below its junction with the Fresno River; that the San Joaquin River is a natural stream arising in the Sierra Nevada Mountains, debouching therefrom into the plains of the San Joaquin Valley and flowing thence in its natural course through its main channels and branches through the lands of the plaintiff described in the complaint; that the Fresno River is also a natural stream having its source in the northeast portion of the county of Madera and flowing thence in its natural course through other lands of the plaintiff described in the complaint; that the Fresno River is a tributary of said San Joaquin River; that the waters of said Fresno River flow into the San Joaquin River at two or more points, one of which is in the said county of Madera

and the other in the county of Merced; that the waters of said Fresno River naturally flow into and mingle with the waters of said San Joaquin River above nearly the whole of the riparian lands of the plaintiff described in the complaint situated in Merced County and flow through, over, and upon the lands of plaintiff in said county, that the waters of the Fresno River flow through, over, and upon the lands of plaintiff in Madera County, and the waters of said San Joaquin River, including the waters of said Fresno River tributary thereto, except when diverted by defendant, naturally flow through, over, and upon said lands, thereby irrigating them and making them fit for cultivation and pasturage; that at large expense plaintiff has graded and leveled large portions of said land in both counties and constructed canals and other works for utilizing the waters of said Fresno and San Joaquin rivers and has irrigated large portions of said land and has produced large crops of grass, feed, and cereals thereon; that the climate of that portion of the San Joaquin Valley where said lands are situated is very dry and the annual rainfall very slight, and that said lands unless irrigated otherwise than by the natural rainfall are unfit for cultivation and pasturage; that during the spring and summer months of every year, and occasionally in the winter months, there is a large increase of the volume of water flowing down said Fresno and San Joaquin rivers caused by rainfall and melting of the snow in the Sierra Nevada Mountains, such increased flow occurring sometimes in one of said rivers, sometimes in the other, and sometimes in both at the same time; that the annual increased flow of water coming down said rivers at said times has from time immemorial, except when diverted by defendant, caused said rivers to overflow and to cover with said overflow a large portion of the lands previously described for a limited period of time each year; that the water causing and constituting such overflow has in each year brought down large quantities of material to said lands from the mountains and valleys through which said rivers flow in their course to said lands; deposited said material on them and thereby fertilized and enriched said lands; that such annual overflowing of said lands has so irrigated them; that a portion thereof, as the water receded therefrom, could be cultivated and crops raised thereon without further irrigation,

and but for such overflowing could not have been cultivated or crops raised thereon except said lands were artificially irrigated; that during the lower stages of the waters of the Fresno River the waters thereof are confined to and flow within the lower banks of the same; that when the waters of said rivers increase each year, such increased flow thereof naturally flows over and covers the low-lying meadow lands within and near the banks of said Fresno River; that said waters are at all times confined within the banks of said river and by such increased flow the said meadow lands are naturally watered, irrigated, and fertilized, and made more valuable thereby. It is then alleged that within one year prior to the commencement of the action, the defendant constructed near the banks of said Fresno River on lands belonging to it situated in Madera County certain reservoirs, and also certain dams and levees in connection with said reservoirs; that said reservoirs cover several hundred acres of land and are capable of retaining and holding quantities of water to a depth of from one to twenty feet over the whole area of said reservoirs; that for the purpose of diverting the waters of the Fresno River from the natural channel thereof into said reservoirs the defendant within sixty days prior to the commencement of this action excavated and enlarged ditches and channels leading out of said river into said reservoirs, which ditches and channels were intended to convey, and have been and will be used by defendant to convey, the waters of said river from the natural channel into said reservoirs, and defendant intends to use said waters on lands not riparian to either said Fresno or San Joaquin rivers; that the waters thus diverted and intended to be diverted from said river by defendant are the natural flow of said Fresno River and are waters which, but for such diversion, would naturally flow down said river and the channels and waterways thereof and of said San Joaquin River through and over the lands of plaintiff. That by such wrongful diversions plaintiff will be deprived of the natural flow of the waters of said Fresno and San Joaquin rivers through and over its lands and of the annual wetting, irrigation, and fertilization thereof by said waters, and will be deprived of the valuable and increased pasturage, feed, and crops which it has annually received from said lands as the benefit of such natural annual overflowing, irrigation, and fer-

tilization, and said lands will thereby deteriorate in quality and largely depreciate in value. The prayer is for a temporary injunction pending the trial of the action restraining the defendant from diverting from said Fresno River by means of said canals to said reservoirs any of the waters naturally flowing therein, and that upon a final hearing the injunction be made perpetual. Also for damages in the sum of five thousand dollars for injuries already sustained.

It will be observed that the complaint in the action does not touch the ancient and prescriptive right which was asserted by defendant and involved in the Madera suit, and under which it claimed the right to divert by means of its main canal and general canal system, waters from the Fresno River to the extent of four hundred cubic feet flowing per second. It does not affect this prescriptive right at all.

It relates solely to reservoirs constructed by defendant long after the commencement of the Madera County suit, in which such prescriptive rights were involved; applies only to new diversions of the waters of the Fresno River made or being made by the defendant within a year prior to the commencement of the present action in Merced County.

When the matter of granting the preliminary injunction came up for hearing, an elaborate showing was made on both sides and the injunction was granted, and from the order granting it this appeal is taken.

Before approaching a consideration of the main question on this appeal it will be necessary to dispose of some preliminary objections urged by appellant.

It is insisted that the court had no jurisdiction to grant—as appellant claims it did—an injunction affecting its ancient and prescriptive diversion of the waters of the Fresno River to the extent of four hundred cubic feet of water per second, which it is insisted was not involved in the present action at all. But as we understand the terms of the preliminary injunction in question in this suit, it did not adjudicate definitely as to such rights. It was, of course, necessary for the court to investigate, to some extent, the claim to such rights by defendant for the purpose of protecting them, while at the same time it was considering to what extent a preliminary injunction should be granted against a diversion of the water of the river in excess of them. The conclusion of the court

as to the extent such prescriptive rights should be protected, or at least be unaffected by the preliminary injunction in the present suit, was not in the nature of a final judgment in the matter upon the ancient and prescriptive rights of the defendant. That was a subject for determination in the Madera County suit and was involved in the Merced County suit only to the extent of ascertaining in a general way what this right might be for the purpose of fixing the terms of the preliminary injunction. While the claim of the defendant was that its main canal had a capacity for diverting four hundred cubic feet of water from the Fresno River flowing per second, there was evidence that its capacity did not exceed one hundred and seventy-five cubic feet of water so flowing, and that the amount of water applied to beneficial uses by the defendant from the water of said river, including that added by the defendant thereto from other sources or streams, did not exceed one hundred cubic feet of water flowing per second. As the court allowed the defendant, in the preliminary injunction involved here, to divert, pending the suit, two hundred and twenty cubic feet of water flowing per second, besides all water which it claimed to have added to the river from other sources, it cannot be said that the discretion of the court was abused in making the preliminary injunction. It allowed a continued diversion of the water by the defendant to the extent that the evidence in the matter of the preliminary injunction showed that it had a prescriptive right to divert it. Of course, as we have said, this conclusion is not final and the order granting the preliminary injunction was made subject to the further order of the Merced court. If the court in the Madera County suit, where that question is directly involved, should determine that the defendant has a prescriptive right to divert more than two hundred and twenty cubic feet flowing per second of the waters of the Fresno River, the court in the Merced County suit will undoubtedly, as it shall be its duty to do, modify the preliminary injunction so as to conform to any determination of the superior court of Madera County in that respect.

It is next insisted that the superior court of Merced County had no jurisdiction in the case, and no jurisdiction to issue an injunction; that an action to determine an adverse claim to water is a real action and an action to quiet title, which must

be brought where the subject-matter of the action is situated; that this action is of that character, being an action to quiet the title of plaintiff as a riparian owner of lands in Madera County to the waters of the Fresno River flowing through them in said county; that the addition in the complaint of the Merced County lands was for the purpose of simulating a case within the jurisdiction of the superior court of Merced County.

It is unnecessary here to consider the allegations in the complaint, further than to say that they are not addressed to an action to quiet title to real property. The quieting of title is not involved in the action at all, so that section 5 of article VI of the constitution, requiring such an action to be *commenced* in the county in which the real estate, or some part thereof, affected by the action is situated, has no application. It is true that the right of a riparian proprietor to the flow of water through his land is inseparably annexed to the soil, not as an easement or appurtenance thereto, but as a part or parcel of the land (*Lux* v. *Haggin,* 69 Cal. 255, 391, [10 Pac. 674], and that an action to quiet his title to such water must, under the constitutional provision referred to, be *commenced* in the county where the land or some part of it is situated. But this is not such an action. This is not an action to quiet the title of plaintiff to such flow of water, but to recover damages for injuries to the real property of plaintiff through the diversion of such water therefrom, and for an injunction against the continuance of such diversion, and so does not come within the constitutional provision. There is no provision of law, either statutory or constitutional, requiring actions for damages to real property to be *commenced* in the county where the real property injured is situated. The statute (Code Civ. Proc., sec. 392, subd. 1) only requires that such action *must* be *tried* in the county where the real estate injured is situated. It is not required to be *commenced* there, and when it is *commenced* in a county other than the one where the real property injured is located, the court acquires jurisdiction to try the cause unless the defendant applies for its transfer for trial to the county where the real property is situated (*Miller & Lux* v. *Kern Co. Land Co.,* 140 Cal. 132, [73 Pac. 836] ; *Grocers' Fruit Growers' Union* v. *Kern Co. Land Co.,* 150 Cal. 466, [89 Pac. 120].)

Under this view the jurisdiction of the Merced court would not be affected by the fact, even if it were as claimed by appellant, that the injuries complained of by plaintiff were really injuries to its real property situated in Madera County. The action, under the authorities cited, could still be properly *commenced* in Merced County subject to be transferred to Madera County for trial on application of the defendant.

We now proceed to a consideration of the main and controlling question presented in the complaint in this Merced County suit and arising under the showing made by the respective parties on the hearing for the preliminary injunction, which is as to the character of the waters which the plaintiff alleged the defendant was attempting to acquire by these new diversions. The claim of the defendant, asserted at the hearing, and to which its showing was addressed, was that the waters it intended to divert did not constitute any part of the ordinary or usual flow of the Fresno River, but were waters occurring through unusual and extraordinary freshets, or, to state its position more fully, it was that in seasons of heavy rains in the mountains and on very rare occasions and for a few days only, and only in years when there has been an unusual precipitation in the watershed of said Fresno River, that river brings down to the plains an immense amount of storm, freshet, and flood waters which is in excess of the ordinary or usual flow of said river, and which is never carried down through the plains in its channel; that said river as it runs through the plains is not deep and is incapable of carrying said storm, freshet, or flood waters; that these waters form no part of the ordinary or usual flow of the Fresno River, but overflow and pass over the plains and never return to the channel of said river, and that such waters are wholly lost and wasted; that it is to conserve and save these storm, freshet, and flood waters—which had in the past and otherwise would still continue to be wasted and lost, and in which plaintiff had no right, either riparian or otherwise—and for no other purpose, that defendant had constructed the reservoirs and works referred to in the complaint so that said storm, freshet, and flood waters might be used to supply the deficiency in the quantity of water in the channel of said river at its usual and normal flow; that the purpose of defendant is to use said flood waters which do not constitute the usual or

ordinary and normal flow of water in the channel of said river, or which would flow therein along or through the land of plaintiff, and which if not saved would become wasted or lost.

On the part of the plaintiff it was claimed, and its showing was made to support that claim, that the rise in the flow of the waters of said Fresno River claimed by defendant to be extraordinary and occurring on very rare occasions, was not such in point of fact; that such overflow occurred in all years of ordinary rain and snowfall and constituted the regular annual and usual flow of said river, and that every year when there is a continuous rainfall in the watershed of the Fresno River a large volume of water flows in that watercourse and is carried in the channel of said river, through and over lands of plaintiff in Madera County and is emptied into the San Joaquin at a point below them, and thence flows therein over the lands of plaintiff in Merced County.

The court on the hearing found that this claim of plaintiff relative to such waters was correct, and while the accuracy of this conclusion is questioned by appellant, we think that the showing made on the part of plaintiff clearly warranted it.

The matter was practically heard upon affidavits, a large number of which were filed on either side, and those upon the part of plaintiff, made by persons who had observed conditions on said Fresno River for twenty and thirty years, show that practically in every year during the winter and early spring months, on account of rainfall and the melting of the snows in the watershed of the stream, the Fresno River carries a large volume of water; that this entire volume of water, if not interfered with, is carried in the channel of the river past the point where the water is diverted from the river into the reservoirs of appellant complained of, and for some distance west of the town of Madera, when the river divides into two or more channels which diverge and flow in the same general direction as the main channel of the river and further on unite with it; that when the volume of water flowing in the river reaches the higher stages a portion of the water flows into these branch channels; that at the highest stages of the flow the water overflows the main and branch channels of the river at various points and spreads over the low-lying lands adjacent thereto; that the main and branch channels of the

river and the lands subject to overflow lie in a trough or basin running parallel with the river for a distance of about eighteen miles; that all of the water which so overflows flows on with the water confined in the lower banks of the main and branch channels of the river in a westerly direction and in a continuous body down to Lone Willow slough and finally into the main channel of the San Joaquin River; that none of the water which overflows is vagrant or becomes lost or wasted, but flows in a continuous body, as above stated, within a clearly defined channel, and so continues until the volume of water coming down the stream commences to lower, when the overflow waters recede back into the main channel of the river and flow on with the rest of the water; that this overflow is practically of annual occurrence, and may be and is anticipated in every season of ordinary rainfall within the watershed of the Fresno River and fails to occur only in seasons of drouth or exceptionally light rainfall.

Upon this showing it cannot be said that a flow of water, occurring as these waters are shown to occur, constitutes an extraordinary and unusual flow. In fact, their occurrence is usual and ordinary. It appears that they occur practically every year and are reasonably expected to do so, and an extraordinary condition of the seasons is presented when they do not occur; they are practically of annual occurrence and last for several months. They are not waters gathered into the stream as the result of occasional and unusual freshets, but are waters which on account of climatic conditions prevailing in the region where the Fresno River has its source are usually expected to occur, do occur, and only fail to do so when ordinary climatic conditions are extraordinary—when a season of drouth prevails.

As to such waters, it is said in Gould on Waters, section 211, "Ordinary rainfalls are such as are not unprecedented or extraordinary; and hence floods and freshets which habitually occur and recur again, though at irregular and infrequent intervals, are not extraordinary and unprecedented. It has been well said that 'freshets are regarded as ordinary which are well known to occur in the stream occasionally through a period of years though at no regular intervals.' " (*Heilbron* v. *Fowler Switch Canal Co.,* 75 Cal. 426, [7 Am. St. Rep. 183, 17 Pac. 535]; *Cairo Railway Co.* v. *Brevoort,* 62

Fed. 129; *California T. & A. Co.* v. *Enterprise C. & L. Co.,* 127 Fed. 741.)

And when such usually recurring floods or freshets are accustomed to swell the banks of a river beyond the low-water mark of dry seasons and overflow them, but such waters flow in a continuous body with the rest of the water in the stream and along well-defined boundaries, they constitute a single natural watercourse. It is immaterial that the boundaries of such stream vary with the seasons or that they do not consist of visible banks. It is only necessary that there be natural and accustomed limits to the channel. If within these limits or boundaries nature has devised an accustomed channel for the limited flow of the waters therein during the dry season, and an accustomed but extended channel for their flow when the volume is increased by annual flood waters, and all flow in one continuous stream between these boundaries and are naturally confined thereto, and when the waters lower the overflow recedes into the main channel, this constitutes one natural watercourse for all such waters and the rights of a riparian owner thereto cannot be invaded or interfered with to his injury. This is the character of the waters of the Fresno River, the flow of which it is shown the defendant intends to divert. These overflow waters, occasioned through such usually recurring floods and freshets, are not waters which flow beyond the natural channel boundaries of the stream which nature has designed to confine their flow; they are not waters which depart from the stream or are lost or wasted; they flow in a well-defined channel in a continuous body and in a definite course to the San Joaquin River, and while they spread over the bottom lands, or low places bordering on the main channel of the Fresno River as it carries its stream during the dry season, still this is the usual, ordinary, and natural channel in which they flow at all periods of overflow, the waters receding to the main channel as the overflow ceases.

It is well determined by the authorities that waters flowing under circumstances such as these, notwithstanding they may consist of a large expanse of water on either side of the main channel, constitute but a single watercourse and that riparian rights pertain to the whole of it. As is said in *Lux* v. *Haggin,* 69 Cal. 418, [10 Pac. 674], "it is not essential to a watercourse that the banks shall be unchangeable or that there shall be

everywhere a visible change in the angle of ascent marking the line between bed and banks. . . . We can conceive that in the course of a stream there may be shallow places where the water spreads and where there is no distinct ravine or gully. Two ascending surfaces may rise from the line of meeting very gradually for an indefinite distance on either side. In such case if water flowed periodically at the portion of the depression it flowed in a channel . . ." In *Crawford* v. *Rambo,* 44 Ohio St. 279, 282, [7 N. E. 429, 431], the court says: "It is difficult to see upon what principle the flood waters of a river can be likened to surface waters. When it is said that a river is out of its banks no more is implied than that its volume then exceeds what it ordinarily is. Whether high or low, the entire volume at any time constitutes the water of the river at such time, and the land over which its current flows must be regarded as its channel; so that when, swollen by rains and melting snows it extends and flows over the bottom in its course, that is its flood channel, and when by drouths it is reduced to its minimum, that is its low water channel."

So in *O'Connell* v. *East Tennessee Ry Co.,* 87 Ga., 246, [27 Am. St. Rep. 246, 13 S. E. 489, 491], "If the flood water forms a continuous body with the water flowing in the ordinary channel, or if it departs from such channel *animo revertendi,* as by the recession of the waters, it is to be regarded as still a part of the river . . . The surplus waters do not cease to be a part of the river when they spread over the adjacent low grounds without well-defined banks or channels so long as they form with it one body of water eventually to be discharged through the proper channel." To the same effect are *Chicago etc. Ry. Co.* v. *Emmert,* 53 Neb. 237, [68 Am. St. Rep. 602, 73 N. W. 540] ; *Fordham* v. *Northern Pacific Ry. Co.,* 30 Mont. 421, [104 Am. St. Rep. 729, 76 Pac. 1040] ; *Jones* v. *Seaboard etc. Ry. Co.,* 67 S. C. 181, [45 S. E. 188] ; *New York etc. Ry. Co.* v. *Hamlet Hay Co.,* 149 Ind. 344, [47 N. E. 1060, 49 N. E. 269] ; *Cairo etc. Ry. Co.* v. *Brevoort,* 62 Fed. 129.

And where the stream usually flows in a continuous current, the fact that the water of the stream, on account of the level character of the land, spreads over a large area without apparent banks does not affect its character as a watercourse. (*Macomber* v. *Godfrey,* 108 Mass. 219, [11 Am. Rep. 340] ; *West* v. *Taylor,* 16 Or. 165, [13 Pac. 665].)

But counsel for appellants rely upon the cases of *Fifield* v. *Spring Valley W. Works*, 130 Cal. 552, [62 Pac. 1054]; and *Coleman* v. *LaFranc*, 137 Cal. 214, [69 Pac. 1011], in support of their claim that a riparian proprietor cannot restrain the diversion of the storm or freshet waters of a stream when such diversion will not prevent the flowing over his land of the ordinary waters of the stream, or in any way interfere with his right appurtenant thereto. We do not understand these authorities cited to sustain the proposition as broadly as appellant contends for, and an examination of them shows that they apply to conditions different from those involved in the matter at bar. In the present case the storm and freshet waters are not something distinct and separate from the ordinary waters of the Fresno River. As a fact, and under the authorities, being annually recurring floods and freshets, flowing in a clearly defined channel, they constitute a part of the ordinary flow of the waters of such river.

But as to the cases cited. All they decide is, that an injunction restraining the diversion of storm or flood waters will not be granted at the instance of a riparian owner when it appears that he will not be injured in any way by such diversion. In the *Fifield* case, which involved a flow of the water of a creek through lands of plaintiff, a riparian proprietor, his right to an injunction preventing a diversion of storm waters was denied because he was not injured thereby, the trial court finding that the diversion of the storm or flood waters of said creek would not damage his land in any way, nor in any way interfere with his right in the premises or with the right appurtenant to his land.

In the *Coleman* case the suit was between riparian proprietors on the stream, and we do not perceive that in that case anything was decided relative to the diversion of flood waters as flood waters. The defendant in the case had built a dam in the stream for the purpose of utilizing the flood waters at times when there was abundant water for all riparian owners. It was decided that both parties as riparian owners were entitled to a reasonable quantity of the water of the stream for irrigation, and the defendant was proceeding within his rights, in diverting the waters to that extent; that plaintiff could not enjoin the use of such water by defendant unless he could show that such use was in excess of his riparian

right and resulted in injury to plaintiff. The underlying principle in these cases is that there will be no injunction granted to prevent the diversion of storm or flood waters unless such diversion will result in injury to the riparian proprietor invoking it. But this principle cannot be applied here because it is fully shown by the affidavits of plaintiff, as alleged in the complaint, that very often the flow of the water of said Fresno River is insufficient in quantity to irrigate the land of plaintiff riparian thereto; that the annual rainfall in that region is very slight and that unless irrigated otherwise than by the natural rainfall, such lands are unfit for cultivation and pasturage; that such overflow water occasioned by the floods and freshets has yearly brought down and deposited on such lands large quantities of fertilizing and enriching materials, increasing their productiveness and enhancing their value; that the water overflowing said lands is of great benefit to them, allowing of their cultivation and production of valuable crops and feed thereon without further irrigation; that if the flow of said waters is taken away, said lands will become arid and greatly depreciated in value. This showing presents a case of great and irreparable injury to result to plaintiff if the diversion of these waters is accomplished, and presents a condition to which the principle in the Fifield and Coleman cases has no application whatever.

The last point made by appellant is in the nature of an estoppel invoked against the plaintiff. It is insisted that no relief by injunction should be granted the plaintiff, because it is claimed that plaintiff knowingly stood by while appellant as a public service corporation and at great expense and notoriously and publicly, constructed a large and extensive system of works designed for the public use, and brought them to completion before the commencement of this action; that under this state of alleged facts plaintiff is precluded from all right to equitable relief, and its only remedy is an action at law for damages. In support of this position, the principle announced in that respect in *Katz* v. *Walkinshaw*, 141 Cal. 116, [99 Am. St. Rep. 35, 70 Pac. 663, 74 Pac. 696]; and *Newport* v. *Temescal Water Co.*, 149 Cal. 531, [87 Pac. 372], is invoked. The principle contended for and sustained by the cases cited and others is unquestionably correct. But the evidence produced at the hearing below did not warrant its

application. The present length of this opinion precludes any detailed mention of the evidence on the point. It is sufficient to say that it appeared on the hearing below that the plaintiff never knew or heard of the proposed construction of appellant's reservoirs until the latter part of 1903 or early part of 1904; that it did not know or suppose until it learned later to the contrary, that the reservoirs were being constructed for any other purpose than the storage of such waters as the canal company was asserting in the then pending Madera County suit it had acquired a right to divert by prescription; that in the month of March, 1904, it first heard that the canal company intended to divert larger quantities of water into the reservoirs than it had theretofore claimed the right to do, and on the twenty-seventh of that month the supplemental complaint in the Madera County suit to prevent such proposed increased diversions was filed; that immediately on said amended complaint being stricken out this action was commenced; that no appropriation or use of the so-called storm waters of Fresno River was made by the canal company prior to the filing of the supplemental complaint, or prior to the commencement of this present action; that the only diversion of any water to these reservoirs prior thereto was for the purpose of testing one of them, which, on the test, was found insufficient to hold it; that no waters were turned therein to be applied, or which were applied, to any beneficial use or purpose. Under these facts, the principle contended for in the cases cited has no application.

There are no other points which require mention or discussion, if we have omitted the consideration of any, which we think we have not. We perceive no reason for disturbing the order appealed from. It is purely a matter of discretion with a trial court whether a preliminary injunction applied for shall be granted or denied, and the exercise of such discretion will not be disturbed unless it clearly appears to have been abused. Nothing of the kind appears here, and the order appealed from is therefore affirmed.

McFarland, J., and Henshaw, J., concurred.