EASTERN OREGON LAND CO. v. WILLOW RIVER LAND & IRRIGATION CO.

(Circuit Court, D. Oregon. November 10, 1910.) †

No. 3,398.

1. INJUNCTION (§ 37*)—POSSESSION OF LAND—DISPUTED TITLE—PRIOR TRIAL AT LAW.

Where, in a suit to restrain the conversion of the waste waters of a stream by the construction of a dam, complainant claimed to own the dam and reservoir site and also land below the dam under a wagon road grant which expressly reserved all lands containing mineral, and defendant denied plaintiff's ownership, and claimed that the land was in fact mineral and so reserved, defendant was entitled to a trial of the issue of complainant's title to a jury, and hence a court of equity would not oust defendant's possession or enjoin it from using the premises until complainant's title had been established at law.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 85; Dec. Dig. § 37.*]

2. PUBLIC LANDS (§ 114*)—PATENT—CONCLUSIVENESS.

The issuance of a patent to certain lands by the United States was not a conclusive adjudication that the lands were nonmineral, where the

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

† Received for publication June 7, 1911.

patent itself contained an exception of all mineral lands should any be found in the tract described.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 314-322; Dec. Dig. § 114.*

Decisions of land department, their conclusiveness and effect, see notes to Hartman v. Warren, 22 C. C. A. 38; Carson City Gold & S. M. Co. v. North Star Min. Co., 28 C. C. A. 341; Uinta Tunnell M. & T. Co. v. Creede & C. C. M. & M. Co., 57 C. C. A. 207.]

3. WATERS AND WATER COURSES (§ 85*)—RIPARIAN PROPRIETORS—RIGHT TO FLOW—INJUNCTION.

While a riparian proprietor is entitled to the ordinary and usual flow of a stream so long as it is of beneficial use to him, including under some circumstances flood waters reasonably to be expected during the ordinary seasons, a lower riparian proprietor was not entitled to restrain diversion of the flood waters of a stream by a nonriparian proprietor, where he was not injured thereby.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig. §§ 84-90; Dec. Dig. § 85.*]

Suit by the Eastern Oregon Land Company against the Willow River Land & Irrigation Company. Complaint dismissed.

J. N. Teal, Wirt Minor, A. B. Winfree, and W. A. Johnson, for complainant.

Lionel R. Webster, John B. Hart, and Wm. K. Lowrey, for defendant.

BEAN, District Judge. The defendant, an irrigation corporation organized under the laws of this state in the spring of 1908, commenced the construction of a dam across Willow creek, about 25 or 30 miles above the town of Vale, in Malheur county, for the purpose of impounding the flood or waste waters of the stream, to be used in the irrigation and reclamation of large bodies of land owned or controlled by it and for sale and disposition to others.

The complainant, by proper mesne conveyances, is the owner of sundry tracts of uncultivated and unimproved land granted to the state by the act of Congress of February 25, 1867 (14 Stat. 409), to aid in the construction of a military wagon road from Dalles City on the Columbia river to Ft. Boise on the Snake river. Willow creek flows through a part of these lands between the dam site and the mouth of the stream, and the complainant, insisting that it is the owner under such grant of the lands on which the defendant proposed to construct its dam and reservoir, and that its rights as riparian proprietor of the land below the dam will be injuriously affected, brought this suit to enjoin the construction of such dam and the impounding of the water. The case has been tried and submitted on the testimony and the pleadings, and is now for final decision. I have read the pleadings and testimony with care, and have carefully considered the elaborate arguments and briefs submitted by counsel and the authorities cited by them, and will state my conclusions without argument or elaboration.

[1] The complainant is not entitled to the relief sought by injunction for two reasons: (1) The title to the land upon which defendant

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

is constructing its dam and reservoir is in dispute, and should be settled at law. (2) The complainant has not shown that it will be substantially injured by the impounding of the flood or waste waters of the stream. It is true the dam and reservoir site is within the limits of the wagon road grant and upon land patented to the complainant's predecessors in interest by the government of the United States, but by the terms of the grant "mineral lands of the United States" were expressly exempted therefrom, and the patent subsequently issued contains a like exception. The defendant pleads and gives evidence tending to show that the land occupied by it and upon which it is constructing its dam and reservoir is, in fact, mineral land, and was known to be such at the date of the wagon road grant; that prior to and ever since that time it has been occupied and used from time to time for mining purposes, and that for many years prior to the commencement of this suit it had been used, claimed, and occupied as a mining ground by Cole and Insenhofer, to whose title and rights it has succeeded by proper conveyances. It therefore contends that complainant has no title to the land because it was not within the terms of the wagon road grant, and that, if the land is not in fact mineral, it has the legal title thereto by adverse possession of itself and its predecessors in interest. Upon this question defendant has the constitutional right to a trial by jury, and a court of equity will not assume by mandatory injunction to oust it from possession or enjoin it from occupying or using the premises until complainant establishes its title at law. Defendant is in possession of the property claiming title, and the complainant has a complete and adequate remedy at law, and should be required to exercise it. Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; 22 Cyc. 818.

[2] Complainant insists, however, that the issuance of patent by the government of the United States to its predecessor in interest is a conclusive adjudication that the lands described therein are nonmineral. That would probably be true if the patent contained no reservation (Barden v. N. P. R. R., 154 U. S. 288, 14 Sup. Ct. 1030, 38 L. Ed. 992), but it contains a clause "excluding and excepting all minerals lands should any such be found in the tract aforesaid." This manifests an unmistakable intention on the part of the government not to convey mineral lands and repels any inference that the department adjudicated or intended to adjudicate that no part of the land described in the patent was mineral.

The Impounding of the Flood Waters no Substantial Injury to Complainant. The general doctrine of riparian rights is too firmly established in this state to be shaken now by judicial decision. It is useless to cite authorities. [3] The riparian proprietor is entitled to the ordinary and usual flow of a stream as long as it is of any beneficial use to him, and this may, under some circumstances, include flood or overflow waters reasonably to be anticipated during ordinary seasons. Miller & Lux v. Madera Canal & Ir. Co., 155 Cal. 59, 99 Pac. 502, 22 L. R. A. (N. S.) 391; Miller v. Bay Cities Water Co., 157 Cal. 256, 107 Pac. 115, 27 L. R. A. (N. S.) 772. But in my judgment a lower riparian proprietor who is not injured by the diversion of

the flood waters above his land cannot invoke the aid of a court of equity to restrain such diversion although by a nonriparian proprietor. Such is the holding of the Supreme Court of California. Fifield v. Spring Valley Waterworks, 130 Cal. 552, 62 Pac. 1054. I am not advised that the direct question has ever been passed upon by the Supreme Court of this state, but I think the tendency of the later decisions is to that effect. Indeed, in my judgment, no other rule can be adopted which will serve to develop the arid sections of the state and be in harmony with the state legislation concerning water, its appropriation, and use. The modern tendency is to make the beneficial use of water the test of the right, and, unless it is put to a beneficial use by a riparian proprietor or is of some substantial benefit to him, he ought not to be allowed to prevent its use by others.

Now, in this case, Willow creek is a small stream. In the spring and early summer it carries considerable water, but during the latter part of the summer goes practically, if not completely, dry. All the normal flow has been appropriated by persons other than the complainant. It therefore has no interest whatever in such flow, nor is it concerned as to the effect the impounding of the flood waters will have thereon. During the times of heavy rains or melting snows, it often happens that more water comes down from the watershed than can be carried in the channel, and overflows the low lands along the banks. The flood or high water generally occurs in February, when the ground is frozen, and therefore runs off without benefit to anyone. It sometimes occurs later in the season, and then saturates or irrigates the overflowed land, and aids the natural growth of wild grass thereon. These floods or high waters do not occur annually, but at irregular intervals, and there is no evidence to the effect that they can reasonably be anticipated every season, nor do they cover the low lands with a thin sheet of water which remains there for some time thus thoroughly saturating the ground as is the case in some other parts of the arid section, but they run off rapidly and only continue for a few days at a time. Complainant owns five or six odd-numbered sections at sundry places along the stream below the site of defendant's proposed dam, a small portion of each of which is overflowed by the flood or storm waters. The land so overflowed is not inclosed or cultivated. The witnesses differ as to the total area of such overflowed land. Complainant's witnesses place it at from 300 to 400 acres in the aggregate, while those of defendant say it will not exceed 40 or 50 acres. In any event, the area is not large, and the quantity overflowed, taking it altogether, is small. The evidence is also conflicting as to whether the flood waters are a benefit or a detriment to the land overflowed. Many witnesses, settlers in the valley, have testified that in their judgment it is a decided detriment. Others seem to be as positive that it is a benefit, but, on the whole, I am of the opinion that it has not been shown that the impounding of the flood or storm waters by the defendant company will be of such a substantial injury to the complainant as will justify a court of equity enjoining the beneficial use thereof by the defendant.

The complaint will be dismissed.