[Civ. No. 4397. First Appellate District, Division One.—February 27, 1923.]

HAZEL E. WOOD et al., Appellants, v. CHARLES M. BUFFORD et al., Respondents.

[1] INJUNCTION — EXTENSION OF TIME OF PAYMENT OF CORPORATION NOTE — DISCRETION NOT ABUSED. — In an action to enjoin the majority stockholders and the majority of the members of the board of directors of a corporation from extending the time of payment of a promissory note executed by a majority stockholder to the corporation for the alleged purpose of obtaining money to buy additional stock and gain control, it was not an abuse of discretion to refuse to issue a temporary injunction, where it was shown that the corporation was in a prosperous financial condition and that there was no intention to extend the time pending the trial of the action on the merits.

[2] ID.—TEMPORARY INJUNCTION—DISCRETION—APPEAL.—The decision of the trial judge in refusing a temporary injunction will not be disturbed upon appeal in the absence of a clear showing of an abuse of discretion.

APPEAL from an order of the Superior Court of the City and County of San Francisco denying a temporary injunction. Walter Perry Johnson, Judge. Affirmed.

The facts are stated in the opinion of the court.

Walter G. Bonta and Edward W. Engs for Appellants.

Robt. B. Gaylord, Wm. R. Geary, Fred C. Peterson and Charles M. Bufford for Respondents.

THE COURT.—This is an appeal by the plaintiffs from an order denying a temporary injunction, by which plaintiffs sought to enjoin the majority stockholders and the majority of the members of the board of directors of the San Francisco Laundry Association, a corporation, from dismissing two of the employees of said corporation, and also from extending the time of payment of a certain promissory note executed by one of the defendants, Charles M. Bufford, to said corporation for the sum of $25,000, dated May 13, 1918, payable two years after date.

Upon this appeal the appellants make no point of the refusal of the trial court to enjoin the dismissal of said two employees, but they do claim that the court erred in denying the injunction to restrain the defendants, pending trial, from extending the time of the payment of said loan. In this respect appellants, in their opening brief, say: "As to this order, while we believe it to be erroneous as a whole, we have no desire specially to urge error in so far as the court refused to restrain the removal from their positions of the two persons above named. What we do urge upon this court as error is the refusal of the court below to restrain any and all corporate action extending the time of payment of the loan to defendant Bufford."

The record upon which the motion for the injunction was made consists of the verified complaint and of certain affidavits presented by the respective parties.

The allegations of the complaint cover many extraneous matters which are unnecessary to relate here, but the substance of the allegations which are pertinent to the issue raised by this appeal may be stated as follows: The entire capital stock of said corporation consisted of 1,000 shares, of the par value of $100 each. The board of directors was composed of five members. It is then alleged that some time prior to February, 1917, the defendant Charles M. Bufford, who then owned or controlled 259 shares of the capital stock, planned to gain control of said corporation; that, pursuant to said plan, he bargained with certain stockholders for the support of 214 shares belonging to them, and that he purchased 109 shares more from another stockholder named Wells, for which he paid some cash, and to secure the payment of the balance pledged the stock so purchased, together with an additional twenty-five shares of

which he was the owner; that he then forced the resignation of the president and general manager of said corporation and was himself elected to those positions; that he was afterward unable to make the payments on the purchase price of the Wells stock, and said stock was consequently sold, but that some time afterward Bufford obtained from the new owner an option for the repurchase of said stock for the sum of $12,471, and that May 13, 1918, at 3 o'clock P. M., was fixed as the time limit for the exercise of said option; that an annual meeting of the stockholders had been called for the day following, May 14, 1918. It is then alleged that at a directors' meeting held the day previous, to wit, May 13, 1918, at which were present three directors, including Hazel E. Wood, one of the plaintiffs, a proposition in writing was submitted by Bufford and accepted by the directors—Director Wood alone voting against the proposition—whereby Bufford agreed to assume the active management of said corporation at a salary to be thereafter fixed, providing said corporation would loan him the sum of $25,000; that thereafter Bufford's salary was fixed at $60 a week for a period of two years.

The complaint further alleges that in order to make such loan to Bufford it became necessary for said corporation to increase its encumbered indebtedness from $40,000 to $65,000; that as security for the payment of said loan to said corporation Bufford pledged with said corporation 447 shares of capital stock, part of which belonged to him and the balance to Frances V. Wagner and Lawrence Bufford; that with the money thus borrowed Bufford completed the purchase of the Wells and other stock, and that he also liquidated a private debt and thereby obtained the release of certain other stock he had previously pledged.

Said complaint further alleges that Bufford continued to act as president and general manager of said corporation until December 13, 1920, at which time he was removed. Upon information and belief it is alleged that the defendants Frances V. Wagner and Lawrence Bufford have, in writing, bound themselves, jointly and severally with the said Charles M. Bufford, to pay said loan of $25,000; that no interest has been paid on said loan since March 6, 1919, and that said corporation is much in need of said money

for the development and successful operation of its business.

Plaintiffs further allege that on May 2, 1921, the board of directors left to its then president, A. P. Wagner, the matter of the enforcement of the payment of said loan, and that a directors' meeting would be held on May 12, 1921, at which time, it is alleged, Directors Bufford, Wagner, and Schilling had threatened to,. and unless restrained by the court would, extend the time of the payment of said loan, and that irreparable injury would thereby result to the said corporation.

On behalf of seven of the defendants, including the defendant Charles M. Bufford, certain affidavits were filed in opposition to said motion, in which the facts alleged in the complaint were in the main controverted.

By those affidavits it is, among other things, made to appear that the San Francisco Laundry Association was organized by the respective parents of the Bufford and Schilling families in 1868, and was operated by Bufford's father for forty years prior to 1908, and that the defendant Charles M. Bufford, prior to 1917, had been a director of said company for fifteen years and was thoroughly conversant with all of its business; that in 1917 the defendant Bufford realized that the business of said corporation had greatly decreased, and that its plant was deteriorating and depreciating in value; that its gross income had gradually fallen from $218,267 in 1912 to $180,022 in 1917, and that its net gain during those five years was only $5,129; that foreseeing the disastrous future of said corporation and desiring to rehabilitate its business, the said Bufford and Schilling interests, which represented 473 shares of the capital stock, sought to reorganize said business and place it on a sound footing and paying basis; that in order to do so it was necessary, in the interest of harmony, to acquire the Wells stock, which they finally accomplished on May 13, 1918. But it is averred that said stock was purchased by Bufford prior to the directors' meeting of May 13, 1918, and with "funds in which the Laundry Company had no interest, present or future, direct or indirect, but which funds were under the sole control and in the ownership" of said Charles M. Bufford. It is also averred that the loan of $25,000 was made to said Bufford "on, and not before, May 15, 1918."

It is also stated in said affidavits that under the management and direction of said Bufford the business of said company steadily increased, and that for the years 1918, 1919 and 1920 showed a net profit of $25,891.25; that the gross income for 1920 was $347,806.51, as against $180,022.02 for 1917. It is further stated, in said affidavits, that at the time the loan of $25,000 was made the valuation of all property of said company, over all liabilities, was $211,513; that at the time of the hearing of said motion the weekly income from said business was $7,000, and that the indebtedness of said company amounted to $52,000, and no more, and was being reduced at the rate of $500 per month; that the value of the net assets of said company at the time of the hearing of said motion was in excess of $200,000, and that the book value of the capital stock amounted to a sum in excess of $200 a share. It is further averred that the said loan of $25,000 was amply secured by the pledge of the said 447 shares of capital stock.

The complaint was filed on May 10, 1921. The motion was heard on June 3, 1921, and was by the court denied on August 15, 1921. The defendants, in the interim, were restrained from taking any corporate action concerning the matters covered by plaintiff's complaint.

The prayer of the complaint is that defendants be not only enjoined from taking any corporate action concerning the dismissal of said employees, and the extension of the time of the payment of said loan, but also that the defendant Bufford be foreclosed from redeeming the pledged stock, and that said stock be sold to satisfy the amount due on said promissory note.

[1] Much of the briefs of the respective parties is devoted to a discussion of the question of the validity of said loan. In this respect appellant argues that the transaction was in violation of "the fundamental principles of our corporate law" in that it enabled the defendant Bufford, while acting as a director and the president of the company, to buy additional stock in the corporation for himself with the corporation money; and, furthermore, that it was unlawful in that it was in violation of the provisions of section 309 of the Civil Code because the loan was in effect an unlawful distribution to Bufford of a part of the capital stock of the corporation.

We are not concerned on this appeal, we think, with either of those questions, but only with the propositions of whether or not the time for the payment of the loan was likely to be extended pending the trial of the action on the merits, and if so, whether such extension would result in an irreparable injury to the corporation.

As to the latter propositions, the defendants deny that they intend to extend the time of the payment of said loan. And from the statements contained in their affidavits as to the prosperous financial condition of said corporation at the time the motion was heard, it is apparent, we think, that the corporation will suffer no irreparable injury by the refusal to issue such temporary injunction.

In that state of the record the order of the trial court must not be disturbed. (*Moriyama* v. *Veysey,* 52 Cal. App. 215 [198 Pac. 225] ; *Martin* v. *Danziger,* 21 Cal. App. 563 [132 Pac. 284].)

[2] It is the well-established rule that the decision of the trial judge in refusing a temporary injunction will not be disturbed upon appeal in the absence of a clear showing of an abuse of discretion. (*Pellissier* v. *Whittier Water Co.,* 59 Cal. App. 1 [209 Pac. 593] ; *Miller & Lux* v. *Madera Canal etc. Co.,* 155 Cal. 59 [22 L. R. A. (N. S.) 391, 99 Pac. 502] ; *Asiatic Club* v. *Biggy,* 160 Cal. 713 [117 Pac. 912].) In this respect the rule is stated in *Schwartz* v. *Arata,* 45 Cal. App. 596 [188 Pac. 313], as follows: "It is as firmly settled as is any rule of law that whether in a particular case a restraining order or an injunction *pendente lite* should be granted or refused is a matter resting largely in the discretion of the trial court before which the application is made and heard. (See *Raub* v. *Los Angeles T. Ry. Co.,* 103 Cal. 473 [37 Pac. 374] ; *Rogers* v. *Tennant,* 45 Cal. 184; *Patterson* v. *Board of Supervisors,* 50 Cal. 344; *Parrott* v. *Floyd,* 54 Cal. 534; *White* v. *Nunan,* 60 Cal. 406; *Porters Bar Dredging Co.* v. *Beaudry,* 15 Cal. App. 751, 754 [115 Pac. 951].) "

We are satisfied that there has been no abuse of discretion shown in this proceeding, and, therefore, the order of the trial court is affirmed.