[No. 11540. In Bank. — June 18, 1888.]

# GEORGE D. BLISS, Respondent, v. J. H. JOHNSON, Appellant.

Evidence — Photographic Views — Error without Prejudice. — Photographic views are admissible as original evidence respecting the description of the premises in controversy; but error in excluding them is without prejudice, when there is sufficient other evidence as to the topography involved in the inquiry.

Statute of Limitations — Appeal — Findings. — The defense of the statute of limitations is not available on appeal, when the court below finds the facts against the defendant.

Prescription — Obstruction of Watercourse. — A prescriptive right to obstruct a watercourse by means of a dam cannot be acquired by the owner of land merely through the action of water companies who conduct other water across his land with his consent for their own benefit, upon condition that they build the dam to prevent the water thus conducted from overflowing his land below. Such dam, being indispensable to the conduct of the water to the point of user, cannot be claimed by the owner of the land. When destroyed, he has no right to rebuild it so as to obstruct the natural watercourse.

Riparian Rights. — The owner of land on a natural watercourse has the right to the usual flow of the water without obstruction, and an owner above cannot, in protecting his own land from injury, cut off the water of the stream from flowing to the land of the owner below, by means of a dam. He must protect his land by embankments or levees on the side of the stream, without interfering with the flow of water in the channel.

Appeal from the judgment of the Superior Court of Tulare County, and from an order refusing a new trial.

The action was brought June 19, 1883, to enjoin the defendants from maintaining a dam in obstruction of the waters of Outside creek so as to divert them into a canal belonging to the Kaweah Canal and Irrigation Company, and to prevent their flow to lands of the plaintiff, aggregating 5,680 acres, for purposes of irrigation and the use of live-stock. The plaintiff also claimed a right to an increased flow of water in Outside creek, which he alleged had been discharged into the channel of said creek by the People's Ditch Company continuously for a period more than five years prior to the diversion of the same by the defendant, which said

waters flowed down to and through plaintiff's lands in the channel of Outside creek, and was by plaintiff openly, notoriously, under a claim of right adverse to the defendant and to the whole world, used for the irrigation of his said lands, and for the use of his live-stock, for a period of more than five years prior to the acts of the defendant complained of. The defendant denied most of the allegations of the complaint, and, as an affirmative defense, alleged in substance that since the year 1871 the People's ditch had discharged its surplus waters into the Kaweah River, and not into the channel of Outside creek, and that in the year 1873 the defendant gave a parol license to the owners of the People's ditch and their successors to use a slough upon his land, known as Johnson's slough, for the purpose of conveying water therein from said ditch, and that since the year 1873 they have used said slough as a part of said ditch under said license; that in March, 1877, Samuel Fowler dug and constructed an artificial channel, called the Fowler cut, leading from the St. Johns River down to the head of said People's ditch, upon the agreement that said Samuel Fowler and his successors should have the right to take from said People's ditch, and from said Johnson's slough, a certain quantity of water, which was conveyed by means of said Fowler cut into said People's ditch and said Johnson's slough; that it was also understood and agreed between Samuel Fowler, the owners of said People's ditch, and the defendant, as one of the conditions of the right and permission of said Fowler to turn said additional quantity of water into said slough and take it therefrom, that he, Fowler, and his successors would take it by means of an artificial channel, and in such manner as would prevent the water from overflowing the lands of the defendant, Johnson; and that accordingly Johnson, by a parol license, gave to Fowler the right to dig and construct an artificial channel connecting with and running from said Johnson's slough

across defendant's land in a westerly direction for a distance of about one half mile to a channel called Deep creek, which artificial channel was made in pursuance of the parol license, and for the purpose of protecting the lands of Johnson from overflow by the additional quantity of water which had been turned into the People's ditch and Johnson's slough, through the Fowler cut; that this artificial channel leading from Johnson's slough to the channel called Deep creek crossed a low depression of land for a distance of about four rods, which low depression was a shallow branch of said Johnson's slough; that, in order to prevent the additional quantity of water which had been turned into the People's ditch and Johnson's slough through the Fowler cut from overflowing the defendant's land and cutting channels through the same, and in order to confine such water to the artificial channel and in Johnson's slough, it became and was necessary to build an embankment about four rods long on each side of said artificial channel, and in said low depression of land, and it was understood and agreed between Fowler and the defendant, as one of the conditions of the said license given by defendant to Fowler, that he, Fowler, and his successors in interest, would and should maintain a dam and embankment in said low depression of sufficient height and strength to prevent the water from overflowing the lands of defendant, and for his benefit; that said dam and embankment were constructed by said Fowler in May, 1877, and is the same dam and embankment referred to in the complaint as being in the channel of the alleged Outside creek, but was not placed and has never been maintained in said channel; that it was agreed between Fowler and the defendant that if Fowler or his successors should fail to keep up said dam and embankment in said low depression, defendant should have the right to construct and maintain the same for the protection of his land; that said dam and embankment were, from May, 1877, until

about the 3d of April, 1883, openly, notoriously, peaceably, and continuously kept and maintained in said low depression by defendant Johnson, and under his authority and for his benefit, adversely to plaintiff and the whole world, with the knowledge and acquiescence of plaintiff; that on the third day of April, 1883, said dam and embankment were removed by parties other than defendant Johnson, and without his authority or consent, and thereupon the defendant, under and in pursuance of his right so to do, and for the purpose of protecting his land from overflow, and from being cut up with channels and covered with sand, by the action of the water flowing from Johnson's slough through said artificial cut, caused said dam and embankment to be rebuilt in said low depression, and at the place where the same were originally built and maintained; that if the defendant is not permitted to keep and maintain said dam and embankment at the place where the same were originally built, a large body of valuable land, belonging to defendant, will be overflowed, cut up with channels and covered with sand, from the action of the waters flowing from said Johnson's slough through said artificial cut. The defendant claims the right to maintain said dam and embankment at the place where the same were originally built, for the protection of his own property; and that the maintenance of said dam and embankment has not interfered with, and will not interfere with, any right of plaintiff; has not injured, and will not injure, plaintiff's land, or any part thereof; has not diverted, and will not divert, any of the water belonging to said alleged Outside creek, or which of right ought to flow therein. The answer concludes by pleading, in appropriate form, the statute of limitations, sections 318 and 343 of the Code of Civil Procedure. Judgment was rendered in favor of the plaintiff, from which, and from an order refusing a new trial, the defendant appealed. The further facts are stated in the opinion.

*Brown & Daggett,* for Appellants.

*Eugene R. Garber,* for Respondent.

The COURT.—This case was decided in Bank.

A rehearing was subsequently granted, and the cause has been again argued orally and upon paper.

Upon a careful examination of the record, we adhere to the conclusion reached in the former opinion.

We think the photographs offered were original evidence, and not secondary, as stated in the former opinion, and that their admission in evidence was proper; but when compared with the diagram which was admitted, we are of opinion, after studying the photographs in connection with the diagram and evidence, that defendant was in no wise injured by the exclusion of the former. As works of art, they are very creditable; as sources of information upon the pertinent questions involved, they have no appreciable value.

Upon the question of the statute of limitations, the court below found the facts against defendant.

The theory that defendant only consented that the People's Ditch Company, Fowler, or the Kaweah, should run the water down Johnson's slough to a given point, and then take it out and conduct it across his land, upon condition that they should build a dam and prevent it running upon his land below, loses most of its force when we realize that the ditch company was running the water for a practical purpose, and not merely for pleasure, and that to utilize the water for such purpose a conduit for its confinement was absolutely necessary. To give any particular force to the assertion of Johnson that he insisted upon a dam being built, and would have constructed it himself if the company had not, we must suppose that the water company were thereby induced to do something which they would not otherwise have done, which is not apparent here.

It strikes us much as would the claim of an individual to the ownership of a necessary railway bridge across a stream because he had given the right of way for the road across his land on condition that such stream should be bridged. As the bridge in the one case is a necessary integral part of the road, without which it could not be utilized, so in the other the dam was indispensable to the conduct of the water to the point of user.

The cause was tried by a court well versed in questions of this kind, and entirely competent to give weight to every proper consideration bearing upon the evidence, and we do not feel authorized to disturb its findings as to the facts.

The other questions were properly disposed of in the former opinion.

The judgment and order appealed from are affirmed.

The following is the opinion of the court rendered upon the original hearing in Bank, on the 10th of February, 1888:—

THORNTON, J.—This action was brought to restrain the diversion of the waters of Outside creek, and to have removed from the channel thereof obstructions to the free flow of the waters of said creek.

The court below gave judgment for plaintiff, from which defendant appealed.

The defendant moved for a new trial, which was denied, and from the order denying the new trial defendant also appeals.

The defendant urges a new trial on account of insufficiency of the evidence to sustain the decision of the court; but as there is a substantial conflict in the evidence on the material issues, we cannot on such ground, in accordance with the well-settled rule of this court, reverse the order of the court below.

Several points are reserved upon the rulings of the

court in regard to the evidence offered, which we proceed to consider.

It is urged that the court erred in sustaining the objection of plaintiff to the following question put to a witness, Samuel Fowler: "State to the court, now, what work you did, what the condition of the country was before you commenced work, and what work you did in the shape of digging an artificial channel, if you dug one."

The witness had just stated that he knew, and had constructed, an artificial channel called the Fowler cut.

The purpose for which this question was put was to show that by means of the Fowler cut the water which flowed in Johnson's slough was increased, and that such increased quantity of water would overflow and injure defendant's land, if the same was not taken from Johnson's slough by means of an embankment and an artificial cut.

It should be remarked here that there was evidence tending to show that Johnson's slough was a branch or affluent of Outside creek, and that the court so found. On this creek plaintiff was a riparian owner.

It appeared that there was evidence admitted subsequently given by the same witness, that, by means of the Fowler cut and the People's ditch, an increased quantity of water was turned and did flow into Johnson's slough and Outside creek, and therefore the defendant suffered no injury by the rejection of the question. The plaintiff, being an owner of lands on Outside creek below the dam or obstruction put in by defendant which was complained of, had a right to the free flow of the water to his land without obstruction. The dam cut off the flow of the water entirely; and granting that the defendant had a right to protect his land from any injury which the additional quantity of water may have produced, still, he had no right to resort to a dam, a mode of protection which entirely obstructed and cut off the water

of the stream from flowing to plaintiff's land. The defendant might, by embankments or levees on the side of the stream, have fully protected his land from injury, without interfering with the usual flow of water in the channel of the stream. For the damage caused by the additional quantity of water turned in by the means above referred to, defendant has his action against the parties who so turned it in, and could have enjoined them from so doing when it was done. The right claimed by defendant herein goes far beyond this. The claim herein preferred is to obstruct the flow of all the water in the stream, under the pretext of protecting his land from injury by the water, added to that which was the normal flow. We see no reason for allowing such claim, and the strongest reasons why it should not be allowed.

For the same reasons the court did not err in sustaining the objection of plaintiff to the following questions put to defendant:—

"If this dam you speak of, and referred to in the complaint, is torn out, what will be the effect upon your land?"

"Will, or will not, the removal of this dam, referred to in the complaint and answer, result in turning a large body of water down upon your land to places where water is not accustomed to run?"

"State to the court what the result of pulling out that dam was."

The questions were all propounded on the theory that because the water which flowed in the channel of the stream, whether water added by the Fowler cut and People's ditch or not, sometimes injured the defendant's land, that the defendant had a right to obstruct entirely the flow of the stream which resulted and prevented it from reaching the riparian lands on the stream. This, as we have seen, the law disallows.

We see no relevancy to any issue in the case of the

following question put to Johnson: "State whether or not the plaintiff, Bliss, through your license and permission, has cut a channel from the People's ditch, or rather from that portion of Johnson's slough that is used as a part of the People's ditch, for the purpose of carrying water out of the People's ditch into Outside creek."

The main issues in the cause were, whether Outside creek was a natural watercourse, and whether defendant had obstructed the flow of water therein. If the above question had been answered in the affirmative, we cannot see that it would have tended to disprove these issues.

Upon an examination of the photographic views offered and excluded, we cannot see that the defendant was injured by their being ruled out. There was primary evidence as to the ground by witnesses who testified from their personal knowledge of it. The views offered were in the nature of secondary evidence, as to which the best evidence had been offered, viz., that of persons conversant with the topography involved in the inquiry.

We have considered the other questions, and find no error in ruling on them.

The judgment and order must be affirmed. So ordered.

McFARLAND, J., SHARPSTEIN, J., SEARLS, C. J., PATERSON, J., and McKINSTRY, J., concurred.