[S. F. Nos. 4922 and 4923. In Bank.—November 22, 1910.]

## SAN JOAQUIN AND KINGS RIVER CANAL AND IRRIGATION COMPANY, Appellant, v. FRESNO FLUME AND IRRIGATION COMPANY, Respondent.

## MILLER & LUX, Appellant, v. FRESNO FLUME AND IRRIGATION COMPANY, Respondent.

WATER-RIGHTS—INJUNCTION TO RESTRAIN USE OF WATER—DAMAGE MUST BE SHOWN.—A lower claimant of the waters of a stream must show damage to justify a court of equity in restraining an upper claimant from his beneficial use of the waters.

ID.—COMMON LAW WHEN NOT RULE OF DECISION IN CALIFORNIA.—Various problems in connection with the fair apportionment and economic use of the waters of this state never came within the purview of the common law. They have been of necessity, and must continue to be, solved by this court as cases of first impression, and if the rule of decision at common law is found unfitted to the changed conditions in this state, so that its application will work wrong and hardship rather than betterment and good, the court will refuse to approve and follow the doctrine.

ID.—USE OF FLOOD-WATERS—RIGHT TO IMPOUND.—The decisions of this court not only do not deny the right to the use of storm and flood-waters, as against a lower riparian proprietor, but encourage the impounding and distribution of those waters whenever it may be done without substantial damage to the existing rights of others.

ID.—MAINTENANCE OF DAM—NUISANCE—INJUNCTION.—The maintenance of a dam, at the headwaters of a natural stream, will not be enjoined as a nuisance at the instance of a lower riparian proprietor, where its effect does not diminish the flow of the stream.

ID.—DAM TO IMPOUND LOGS—RIGHT OF UPPER RIPARIAN PROPRIETOR.—
An upper riparian proprietor has the right to impound, by means of
a dam, the waters of a stream for the purpose of floating logs, pro-
vided it is so constructed and maintained as not to interfere with
the rights of others to the water of the stream.

APPEALS from judgments of the Superior Court of Fresno
County, and from orders refusing new trials. H. Z. Austin,
Judge.

The facts are stated in the opinion of the court.

Houghton & Houghton, Frank H. Short, and Edward F.
Treadwell, for Appellants.

L. L. Cory, W. S. Goodfellow, and Goodfellow, Eells &
Orrick, for Respondents.

HENSHAW, J.—These appeals present the same questions
and may, therefore, be considered and decided together.
Stevenson Creek is a small stream tributary to the San Joaquin
River. In dry seasons of the year its waters do not reach the
latter. In its course through the mountains it flows into,
through, and out of a flat tract of land, "a mountain meadow,"
about eighty-five miles distant from plaintiffs' lands. Defend-
ant constructed a dam across the cañon at the lower end of
this mountain meadow impounding the rain, storm, and flood-
waters of the adjacent hills and converting the mountain
meadow into a lake. Into this lake it brought timber from its
forests and out of this lake for several miles down the channel
of Stevenson Creek it conducted a V-flume and by the waters
of the lake carried its timber down the V-flume out of the
watershed of the creek to its mills and factories below. De-
fendant has expended for these purposes exceeding one half
million dollars. Plaintiff, Miller & Lux, is a riparian pro-
prietor of the San Joaquin River; and plaintiff, San Joaquin
and Kings River Canal and Irrigation Company, is an appro-
priator of water therefrom. Their actions are to the same end
—to enjoin the maintenance of defendant's dam and its alleged
interference with and diminution of the natural flow of
Stevenson Creek. The trial court found, in brief, that the
dam and operations of defendant did not diminish the flow of

Stevenson Creek to the San Joaquin River and did not interfere with any of plaintiffs' rights. It found that in a state of nature the flow of Stevenson Creek into the mountain meadow was largely absorbed by the lands of that meadow so that comparatively little of the entering water flowed out. It found that by reason of the complete saturation and filling of this mountain meadow and the conversion of it into a lake more water actually flowed down Stevenson Creek below the dam than had previously done so. This water came: 1. From the overflow of the dam; 2. From its leakage; and, 3. From the leakage of the V-flume by which the water was carried for some miles down the channel of Stevenson Creek. Under these findings the relief asked by plaintiffs was denied and they appeal.

Upon appeal they contend: 1. That the maintenance of the dam and works in the bed of Stevenson Creek constitutes a nuisance which should have been enjoined regardless of any question of the injury to plaintiffs and regardless of the question whether or not the dam and works did or did not perceptibly diminish the flow of Stevenson Creek or of the San Joaquin River. 2. That the findings show positive injury to plaintiffs' rights entitling them to the relief sought.

Plaintiffs construe such cases as *Gould* v. *Eaton,* 117 Cal. 539, [49 Pac. 577]; *Barneich* v. *Mercy,* 136 Cal. 205, [68 Pac. 589], and *Miller & Lux* v. *Madera Canal & Irrigation Co.,* 155 Cal. 61, [99 Pac. 502], as establishing the proposition that the riparian owner is entitled to the unobstructed flow of a stream at all times, including flood periods following the annual fall of rains and the melting of snow in the region about the head of the stream, and that, without regard to damage, it is the right of every riparian proprietor to have the water come to his land through its natural channel undiminished in quantity and unimpaired in quality, save to the extent that results from a reasonable use of the water by other riparian owners upon the stream; that, as a necessary corollary to this doctrine the riparian owner is entitled to have the stream flow in its natural channel, and has a right to object to any change in the channel, or to any artificial work of any kind which tends to retard the flow or spread the stream over more surface, or to change its channel. For this reliance is placed, in addition to the cases above cited, on Wood on

Nuisances, page 348; *Ferrea* v. *Knipe*, 28 Cal. 340, [87 Am. Dec. 128]; *Lux* v. *Haggin*, 69 Cal. 255, [4 Pac. 919, 10 Pac. 674]; *Bliss* v. *Johnson*, 76 Cal. 597, [16 Pac. 542, 18 Pac. 785]. But the cases do not support the position which appellants take. Even if at common law or under the civil law it was a part of the usufructuary right of the riparian owner to have the water flow by for no purpose other than to afford him pleasure in its prospect, such is not the rule of decision in this state. The lower claimant must show damage to justify a court of equity in restraining an upper claimant from his beneficial use of the water. The fair apportionment and economic use of the waters of this state are of the utmost importance to its development and well-being. The problems presented never came within the purview of the common law. They have been of necessity, therefore, and must continue to be solved by this court as cases of first impression, and, as in the past, so in the future, if a rule of decision at common law shall be found unfitted to the radically changed conditions existing in this state, so that its application will work wrong and hardship rather than betterment and good, this court will refuse to approve and follow the doctrine.

It will be found, therefore, that the decisions of this state not only do not deny the right to the use of storm and flood-waters, but encourage the impounding and distribution of those waters wherever it may be done without substantial damage to the existing rights of others. Thus, it is said in *Modoc L. & L. S. Co.* v. *Booth*, 102 Cal. 157, [36 Pac. 432]: "In a state like this, where irrigation is greatly needed, and where large areas of land are comparatively worthless unless artificially irrigated, it is difficult to lay down a rule as to riparian rights which will be applicable to and cover all cases. It seems clear, however, that in no case should a riparian owner be permitted to demand, as of right, the intervention of a court of equity to restrain all persons who are not riparian owners from diverting any water from the stream at points above him, simply because he wishes to see the stream flow by or through his land undiminished and unobstructed. In other words, a riparian owner ought not to be permitted to invoke the power of a court of equity to restrain the diversion of water above him by a non-riparian owner, when the amount diverted would not be used by him, and would cause no loss or

injury to him or his land, present or prospective, but would greatly benefit the party diverting it. If this be not so, it would follow, for example, that an owner of land bordering on the Sacramento River in Yolo County could demand an injunction restraining the diversion of any water from that river for use in irrigating non-riparian lands in Glenn or Colusa County, and yet no one, probably, would expect such an injunction, if asked for, to be granted, or, if granted, to be sustained." In *Fifield* v. *Spring Valley Water Works*, 130 Cal. 552, [62 Pac. 1054], it was sought to enjoin defendant from arresting and diverting the waters of San Mateo Creek. The trial court decreed that defendant should permit at all times all the ordinary flow of the creek to go down to plaintiff's lands, but that it could take and divert "the storm or freshet or flood-waters that may flow in or into San Mateo Creek above said lands during times of extraordinary high water or freshet in said creek or stream." The court further found that this diversion would not damage plaintiff's lands in any way nor interfere with his rights in the premises or with rights appurtenant to his land. This court held that under these findings, which were supported, the plaintiff was not injured and was not entitled to an injunction restraining the diversion of such storm or flood-waters. In *Miller* v. *Bay Cities Water Co.*, 157 Cal. 256, [107 Pac. 115], the principle is clearly recognized and declared that an appropriator of water may divert for use to any point beyond the watershed any portion of the waters of the stream which serves no useful purpose either to the riparian owners, or in supplying the underground stratum, or such waters as are in excess of the quantity necessary for such purpose. In *Miller & Lux* v. *Madera Canal Co.*, 155 Cal. 61, [99 Pac. 502], this court treated the questions presented under the findings of the trial court. The contention of defendant was that it was diverting or proposed to divert extraordinary flood or storm-waters without injury to plaintiff. The findings of the court were that the rise in the river level and the flooding of plaintiff's lands occurred in all ordinary years and so constituted a part of the regular and annual and usual flow of the river; that these waters were valuable to the lands of plaintiff, because they both irrigated them and deposited upon them valuable sediment. "Upon this showing," says this court, "it cannot be said that a flow of water occurring

as these waters are shown to occur constitutes an extraordinary and unusual flow. In fact their occurrence is usual and ordinary." And further, it is said that our cases "decide that an injunction restraining the diversion of storm or flood-waters will not be granted at the instance of a riparian owner, when it appears that he will not be injured in any way by such diversion." If the doctrine announced in *Gould* v. *Eaton*, 117 Cal. 539, [49 Pac. 577], may be thought to confer upon a riparian proprietor greater rights than these, namely, the right to have all the water of the stream at all times flow past his land, without regard to the question as to whether or not any diminution of the flow does or could injure him, then it must be said that the doctrine of *Gould* v. *Eaton* is to this extent modified by the later decisions. Of course, the riparian proprietor's rights are not measured by the amount of water which he is actually using at the time of his action. In this sense the actual present damage ceases to be of great consequence, but its place is taken by the necessary and consequential damage which would follow to his land if the unauthorized act of the upper appropriator were allowed to ripen into prescriptive right. *Barneich* v. *Mercy*, 136 Cal. 205, [68 Pac. 589], has no bearing upon this question, the court there deciding merely that a lower riparian proprietor may enjoin an upper riparian proprietor from maintaining a dam upon his land which entirely prevents the flow of the water of the stream to plaintiff's land and ditch. In *Byers* v. *Colonial Irr. Co.*, 134 Cal. 553, [66 Pac. 732], it is ruled that where the dam of the defendant is not found to be a nuisance in itself, but only a nuisance *as used* to interfere with plaintiffs' right, the trial court would not be justified in directing its total abatement or removal, but should limit its decree to modifying the use. Here, as has been said, the court finds upon sufficient evidence that the use of the dam actually increases, and certainly does not diminish the waters of Stevenson Creek, to the flow of which into the San Joaquin River plaintiffs are entitled. As riparian owner, which defendant is, it has the right, independent of these other considerations, to impound the waters of the stream for the purpose of floating logs. This is what it is doing, and this fact itself justifies the construction and maintenance of the dam, provided of course it be not so constructed and maintained as to interfere

with plaintiffs' rights to the water of the stream. (*Mentone Irr. Co.* v. *Redlands etc. Co.*, 155 Cal. 323, [100 Pac. 1082].) There is no such interference.

The judgments and orders appealed from are therefore affirmed.

Lorigan, J., Shaw, J., Melvin, J., Angellotti, J., and Sloss, J., concurred.

Rehearing in Bank denied.