[Civ. No. 26805. First Dist., Div. Two. Feb. 18, 1970.]

COUNTY OF MARIN, Plaintiff and Respondent, v.
J. CHRISTOPHER ROBERTS, Defendant and Appellant;
THE STATE OF CALIFORNIA, Defendant and Respondent.

## COUNSEL

Frank C. S. Pedersen for Defendant and Appellant.

Douglas J. Maloney, County Counsel, Joseph A. Forest and Thomas G. Hendricks, Deputy County Counsel, for Plaintiff and Respondent.

Thomas C. Lynch, Attorney General, and Dennis M. Eagan, Deputy Attorney General, for Defendant and Respondent.

## OPINION

**TAYLOR, J.** — Defendants, Delmar Wise and Diesel Engineering and Maintenance Company, Inc. (hereafter Wise)[1] appeal from a judgment in favor of the County of Marin (hereafter County) ejecting them from trespassing over certain submerged County lands and directing immediate removal of their drydocks. Wise contends that the judgment must be reversed as: 1) the relief sought by the County placed jurisdiction of the action in the municipal court; 2) the evidence was insufficient to support the finding that the drydocks were permanent structures on the submerged lands; 3) the drydocks floated on navigable waters which are the exclusive control of the United States and, therefore, the superior court had no jurisdiction of the subject matter; and 4) the court erred in requiring Wise to remove the drydocks. We have concluded that there is no merit to any of these contentions and that the judgment must be affirmed.

The court found the facts as follows: The County is the owner of the underlying fee to all tidelands in the unincorporated area of the County within Richardson Bay and described as Parcel A, subject to the trust imposed on the County by the state, pursuant to Statutes of 1959, chapter 497, which reserved public rights of navigation, etc. Wise is the owner of four drydocks located on the tidelands of Richardson Bay within the boundaries of Parcel A. At all times, the drydocks were located on and under navigable waters under some control of the United States. The Wise drydocks have settled into the mud and occupy an area slightly in excess of an acre of tidelands. The docks are not floating and do not rise or fall with the tide. Rather, the docks have been located in the same spot within Parcel A and have thus been continuously affixed thereto since at least January of 1967, and have become a permanent installation on the soil of the submerged lands.

On the basis of the above facts, the trial court concluded that the County of Marin was the legal owner of the underlying fee of all the tidelands, subject to the trust imposed by Statutes of 1959, chapter 497, and to the rights of the United States reserved by law. The State of California has a residual interest in the tideland properties which will be fully protected by the judgment herein rendered. Wise is the owner of the four drydocks that constitute illegal encroachment on the publicly owned tidelands. The County has the legal right to have the drydocks removed from

---

[1]Defendants are referred to as they appeared in the trial court. After the filing of the notice of appeal, J. Christopher Roberts was substituted in the place and stead of Delmar Wise and Diesel Engineering and Maintenance Company, Inc., on the ground that he is now the sole owner of and in possession of the drydocks which are the subject of the action herein.

the publicly owned tidelands, either by physical removal or destruction of the docks, and is also entitled to rental value of $50 per month payable commencing April 10, 1968, and for so long as the drydocks remained on the public lands. Wise has no right, title or interest in any of the tidelands.

Accordingly, the court entered its judgment ordering that the County be restored the tidelands without the encroachment of Wise's four drydocks, and further ordering Wise to remove the drydocks within 60 days. The judgment provided, in the alternative, that if the drydocks were not removed within the time limit, the County could do so and the cost of removal or destruction would be entered as costs against Wise. The judgment further directed Wise to pay to the County $50 a month commencing April 10, 1968, until the destruction of the drydocks. This appeal ensued.

■ First, we turn to Wise's contention that only the municipal court had jurisdiction of the subject matter because the relief sought by the County ($50 a month rental for the use of the land) brought the action within the jurisdiction of the municipal court. This contention borders on the frivolous. In an identical proceeding, Marin County Municipal Court Action No. 28082, of which we may take judicial notice (Evid. Code, § 452, subd. (d)), the County recovered judgment against Wise and obtained an order directing the removal of the drydocks within 30 days from the date of entry of the judgment. On appeal, that decision was reversed on the basis that the municipal court had no jurisdiction since Wise denied the County's asserted right to possess the submerged tidelands which were valued at over $5,000. Thereafter, the County initiated the instant action in the superior court for ejectment and also included an additional cause of action seeking recovery for back rents of $50 a month. As in the prior municipal court action, the County here alleged title to all of the Richardson Bay tidelands, which Wise denied. Furthermore, pursuant to Public Resources Code section 6308, the State of California was made a necessary party defendant in the instant action. In view of the above, Wise cannot now argue, in good faith, that the matter properly belongs back in the municipal court.

■ Wise next contends that the drydocks were floating on navigable waters as the evidence does not support the finding that the docks became affixed to the tidelands and constituted an illegal encroachment. In determining whether there is sufficient evidence to support a finding or verdict, this court need only ascertain if there is any substantial evidence to support the finding of the court below.

The record indicates that the chief surveyor for the County testified that he had determined the specific location of the drydocks by the triangulation method on three separate occasions: January 1967, October 1967, and

September 1968. Between January and October of 1967, one corner of one drydock appeared to have moved about 10 feet. However, from October 1967 to September 1968, a period of 11 months, all the corners of the drydocks remained in the same location. Furthermore, he marked and photographed the drydocks at both high and low tides on two different occasions to determine whether or not they rose and fell with the tide. These photographs were introduced into evidence. The surveyor further testified that the drydocks were set in the mud and did not appear to be moved by either the wind or the tide.

The only other evidence, the testimony of Mr. Wise, indicated that the drydocks last floated approximately a month and a half before the trial and were chained close together and secured straight down with a link chain to an old boom on the bottom of the water. The drydocks are filled with water to hold them in place and he can float them by pumping them out. The drydocks rise off the mud fairly often but at only a 6-foot or high tide. However, Mr. Wise admitted that the drydocks had been located in their present location for two years as they had opened the valves in them and sunk them down. If, in fact, the 5,500 ton drydocks were floating (i.e., pumped dry and allowed to float away), it would be necessary to put anchors on and "you would almost lose Sausalito if they drifted away."

These conflicts in the evidence were within the exclusive realm of a trial court. Accordingly, we conclude that there is ample substantial evidence that the drydocks were not floating but were sunk and permanently attached to the tidelands, as found by the trial court.

█ In view of the above conclusion, we need not discuss in great detail Wise's contention that the drydocks floated on navigable waters which are under the exclusive control of the United States.

The Submerged Lands Act of 1953, 43 U.S.C. section 1314, provides, so far as pertinent: "(a) The United States retains all its navigational servitude and rights in and powers of regulation and control of said lands and navigable waters for the constitutional purposes of commerce, navigation, national defense, and international affairs, all of which shall be paramount to, but shall not be deemed to include, proprietary rights of ownership, or the rights of management, administration, leasing, use, and development of the lands and natural resources which are specifically recognized, confirmed, established, and vested in and assigned to the respective States and others by section 1311 of this title."

This statute specifically confirms the state's title to submerged tidelands. The state holds this title not by virtue of a federal grant, but as an incident of the transfer to the state of local sovereignty at the time of admission to the Union (*City of Long Beach* v. *Marshall,* 11 Cal.2d 609, 615 [82 P.2d

362]; *Martin* v. *Waddell,* 41 U.S. (16 Pet.) 366 [10 L.Ed. 997]). The state's title is subject only to the paramount power of the United States to control such waters for the purpose of navigation in interstate and foreign commerce (*Organized Village of Kake* v. *Egan* (D. Alaska 1959) 174 F.Supp. 500).

Wise argues that the term "paramount" indicates that the United States retained title to the lands as well as the navigable waters. In view of the express language of the statute indicating that the paramount right applies only to the regulation and control of the lands and waters for constitutional purposes of commerce and navigation but does not include proprietary rights of ownership or the use and development of the lands, this contention is entirely without merit. It has been held that the United States was required to pay a riparian landowner just compensation for the use of submerged land and interference with the landlord's access to navigable waters (*United States* v. *50 Foot Right of Way in Bayonne, N.J.,* 337 F.2d 956).

Thus, when California was admitted to the Union on September 9, 1850, it acquired absolute fee simple title to the tide and submerged lands here in issue (*City of Long Beach* v. *Marshall, supra*). With the title came a common law trust obligation to use the lands in a manner consistent with the public interest in commerce, navigation and fisheries (*City of Long Beach* v. *Marshall, supra,* p. 614; *Illinois Central R.R. Co.* v. *Illinois,* 146 U.S. 387, 436-437 [36 L.Ed. 1018, 1036-1037, 13 S.Ct. 110]). Subject to the same trust, the state granted the land to the County by Statutes of 1959, chapter 497.

■ Furthermore, the federal government does not derive its power to regulate and improve navigable waters from any proprietary interest in the soils beneath navigable waters but from the commerce clause of the United States Constitution (*Colberg, Inc.* v. *State of California ex rel. Dept. Pub. Wks.,* 67 Cal.2d 408, 419 [62 Cal.Rptr. 401, 432 P.2d 3]; *Scranton* v. *Wheeler,* 179 U.S. 141, 159-160 [45 L.Ed. 126, 135-136, 21 S.Ct. 48]; *Gibson* v. *United States,* 166 U.S. 269 [41 L.Ed. 996, 17 S.Ct. 578]). In the exercise of the federal power over navigable waters, Congress has authorized the fixing of pierhead and bulkhead lines (33 U.S.C. § 404); has prohibited the placing of structures in navigable waters without authorization (33 U.S.C. § 403); and has provided for injunctions to remove such unauthorized structures (33 U.S.C. § 406), as well as the removal of vessels or other craft sunk in navigable channels (33 U.S.C. §§ 409, 414). Congress has also authorized the establishment of anchorage grounds where necessary for safe navigation (33 U.S.C. § 471).

The four drydocks here in question are outside the pierhead and bulk-

head lines set up by the United States Army Corps of Engineers and are within one of the anchorage areas administered by the United States Coast Guard. Neither of these agencies nor any other federal agency has issued a permit to Wise nor has any federal agency taken action to have the drydocks removed.

■ From these facts alone, Wise attempts to argue that since their major business is working on United States governmental vessels, their use is one within the definition of commerce and navigation and, therefore, their drydocks can be placed on the submerged lands owned by the County. This contention is likewise without merit. One who wharfs out onto submerged lands owned by the state without its permission presumably does so for a purpose consistent with the common law trust uses. These purposes, however, do not alter their status as a trespasser subject to an action in ejectment (*Woods* v. *Johnson,* 241 Cal.App.2d 278, 281 [50 Cal.Rptr. 515]; *People v. Davidson,* 30 Cal. 379).

Wise's contention also overlooks the fact that even if the Corps of Engineers had issued a permit here, such a permit would in no way inhibit the rights of the property owner, the County, from ejecting Wise as a trespasser. A Corps of Engineer's permit merely safeguards the public right of navigation—it does not confer any interest in property (*Norfolk Dredging Co.* v. *Radcliff Materials, Inc.,* 264 F.Supp. 399, 402). Similarly, the anchorage permits issued by the Coast Guard relate only to promoting safe navigation and confer no property interest (33 C.F.R. § 110.214, pp. 347-348). Nor does the failure of the Corps of Engineers to order the removal of Wise's sunken drydocks have any bearing on the County's right to seek their removal based on its interest as a property owner. Regardless of the status of the drydocks as obstructions to navigation, they are intrusions on County-owned lands and hence subject to ejectment (*Bolsa Land Co.* v. *Burdick,* 151 Cal. 254, 262 [90 P. 532, 12 L.R.A. N.S. 275]; *People* v. *Davidson, supra*).

■ Wise, citing *People* v. *Anthony O'Boyle, Inc.,* 9 Misc.2d 536 [170 N.Y.S.2d 884], further argues that the removal of drydocks is an admiralty matter and, therefore, outside the jurisdiction of the superior court. We cannot agree. In *O'Boyle, supra,* timber barges anchored on tidal flats within the City of New York were sunk in a violent storm and thereafter abandoned by the owner. Later, the barges were the source of several fires and the New York City Fire Commissioner sued to abate them as a fire hazard and nuisance. The New York court held that it could not order the owner of the barges to abate the nuisance as under the provisions of 33 U.S.C. sections 409, 414 and 415, persons within admiralty jurisdiction could abandon vessels sunken by a storm and thereby be relieved of

liability for their removal. Thus, it is clear that the holding in *O'Boyle* applies only to sunken "vessels" that are "abandoned."

General maritime law has long recognized the right of a shipowner to abandon a vessel that had sunk without intent or neglect on his part, thereby escaping liability for its removal (*United States* v. *Bethlehem Steel Corp.* (9th Cir. 1963) 319 F.2d 512, cert. denied 375 U.S. 966 [11 L.Ed. 2d 415, 84 S.Ct. 484]). Sections 409, 414 and 415 of Title 33 merely confirm this pre-existing law. It is equally well established that the right of abandonment given by section 409 does not apply to vessels negligently or intentionally sunk (*Wyandotte Transp. Co.* v. *United States*, 389 U.S. 191 [19 L.Ed.2d 407, 88 S.Ct. 379]). The Wise drydocks here in question were intentionally put in place. Furthermore, maritime law applies only to "vessels." A floating drydock is not a "vessel." In addition, the Wise drydocks here were clearly not "abandoned" as Wise was attempting to sell them.

Thus, the trial court properly concluded that the Wise drydocks were not immune from ejectment by the County because of any paramount reserved interest of the United States.

■ Finally, we turn to the contention that the court erred in directing the removal of the drydocks. Wise contends that in an action for ejectment, the court could only restore the County to possession of the submerged tidelands and could not also order the removal of the docks. This contention is entirely without merit. The right of the sovereign to maintain an action in ejectment for unlawful encroachments on the tidelands is well established (*People* v. *Davidson, supra; People* v. *Mullender*, 132 Cal. 217 [64 P. 299]; *City of Los Angeles* v. *Anderson*, 206 Cal. 662 [275 P. 789]). In *Coburn* v. *Ames*, 52 Cal. 385 [28 Am.Rep. 634], the court carefully explained the nature of this right as follows, at page 397: "In this country, where the people are sovereign, the *title* to the bed of the ocean is in the State, which represents the sovereign power; and if obstructions are erected which materially impair the public right of navigation and fishery, they may be abated as public nuisances. But all encroachments on navigable tidewaters are not necessarily public nuisances. They may be of such a nature as not to obstruct the public right of navigation and fishery; and in that event the encroachment is what the law terms a *purpresture*—an unlawful intrusion upon the bed of the ocean, the *title* to which is in the sovereign. In such cases, it is for the sovereign authority to decide whether the public good requires that the obstruction be removed."

In the instant case, the sovereign County has determined that the public good requires the removal of the Wise drydocks. While most of the California cases concerning the restitution of tidelands involved wharfs or

piers built onto the public lands, the federal courts have noted that fixed structures, like the drydocks here, that have become grounded in one location, are not used for navigation (*Cope* v. *Vallette Dry Dock Co.,* 119 U.S. 625 [30 L.Ed. 501, 7 S.Ct. 336]). We conclude that the court did not abuse its discretion in ordering removal of the drydocks which were a purpresture belonging to the state and could be treated as a nuisance to be abated forthwith (cf. *Woods* v. *Johnson, supra,* p. 281).

The judgment is affirmed.

Shoemaker, P. J., and David, J. pro tem.,* concurred.

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.